USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/5/2015__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                         :
IOAN MICULA, et al.,                     :
                   Petitioners,  :
                                           :            15 Misc. 107 (Part I)
             -against-          :
                                           :          **OPINION & ORDER**
THE GOVERNMENT OF ROMANIA,    :
                   Respondent.  :
                                         :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Respondent the Government of Romania ("Romania") moves under Federal Rules of

Civil Procedure 59(e), 60(b) and 62(b) to vacate and/or stay (1) the Order and Judgment entered

by this Court sitting in Part I on April 21, 2015 (the "April 21 Judgment"), and (2) the Amended

Order and Judgment dated April 28, 2015 (the "April 28 Judgment"). The Commission of the

European Union (the "Commission")[1] moves to file an amicus curiae brief in support of

Romania's motion.

"District courts have broad discretion to permit or deny the appearance of amici curiae in

a given case." *United States v. Yaroshenko*, --- F. Supp. 3d ----, No. 09 Cr. 524, 2015 WL

687504, at \*1 (S.D.N.Y. Feb. 18, 2015). Because the Commission offers "unique information or

perspective that can help the court beyond the help that the lawyers for the parties are able to

provide," the motion for leave to file the proposed amicus brief is granted, and the Commission's

arguments are addressed in this Opinion. *Lehman XS Trust, Series 2006-GP2 v. Greenpoint*

*Mortg. Funding, Inc.*, No. 12 Civ. 7935, 2014 WL 265784, at \*2 (S.D.N.Y. Jan. 23, 2014)

---

[1]     The Commission, an institution of the European Union (the "E.U."), is entrusted with
ensuring the application of the founding treaties of the E.U. and the measures adopted by E.U.
institutions under those treaties.

(quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.)).  However, for the reasons below, upon due consideration of all the submissions, Romania's motion is denied.

## I.      BACKGROUND

Relying on Romania's assurances that certain financial incentives that Romania instituted around 1998 for investment in "disfavored regions" would continue for a period of 10 years, Petitioners, Swedish nationals and their companies, invested in the disfavored Romanian regions. However, as a condition of its accession to the E.U., Romania repealed these incentives in 2004 because the E.U. considered such incentives impermissible state aid.  Pursuant to a bilateral investment treaty between Sweden and Romania, Petitioners commenced arbitration proceedings in 2005 against Romania for breach of its obligations under that treaty at the International Center for Settlement of Investment Disputes ("ICSID").  ICSID was created by the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"), a multilateral treaty typically called the ICSID Convention.  The E.U. participated as an amicus in the ICSID proceeding and argued, as it does here, that any award would run afoul of European laws.  After extensive proceedings, in December 2013, the ICSID panel issued a 369-page award (the "ICSID Award" or "Award") in Petitioners' favor in the amount of 376,433,229 Romanian lei -- around $116.5 million in U.S. dollars -- plus interest.

On April 9, 2014, Romania filed an application with ICSID to annul the Award, and requested a stay of enforcement of the Award based in part on the argument it repeats here -- that Romania's payment of the Award would violate European law.  On April 18, 2014, the Secretary-General of ICSID put in place a provisional stay.  On August 7, 2014, an ICSID ad hoc

committee conditioned the continuation of the stay on Romania's filing a letter with the ICSID

Secretary-General in 30 days "commit[ing] itself subject to no conditions whatsoever (including

those related to E[uropean] law or decisions) to effect the full payment of its pecuniary

obligation imposed by the Award . . . ."  Romania failed to file the assurance, and by letter dated

September 15, 2014, ICSID confirmed that the stay on enforcement of the Award was

"automatically revoked" as of September 7, 2014.  Accordingly, Petitioners presently have a

valid ICSID award susceptible to recognition and enforcement in the national courts of ICSID's

member states, including the United States.

      In the meantime, the European Commission prevented Romania from making payments

on the Award.  On May 26, 2014, the Commission adopted a "Suspension Injunction" that

prohibited Romania from fulfilling the Award until the Commission reached its "Final

Decision."  On March 30, 2015, the Commission adopted its "Final Decision."  It declared any

payment under the Award a violation of European state aid laws, and ordered Petitioners to

return any portion of the award Romania had already paid them.  Petitioners have appealed the

Suspension Injunction to the General Court of the European Union.  Their time to appeal the

Final Decision has not expired.

      On April 11, 2014, Viorel Micula commenced an ex parte action in the District of

Columbia to "confirm" the Award.  Approximately a year later, on April 16, 2015, the district

judge in the District of Columbia denied Viorel Micula's petition without prejudice because the

judge concluded, as Romania urges here, that ICSID awards may not be converted into

judgments by summary ex parte proceedings. *See Micula v. Government of Romania*, --- F.

Supp. 3d ----, No. 14 Civ. 600, 2015 WL 2354310, at *4 (D.D.C. May 18, 2015)  ("set[ting] forth

the legal analysis supporting the court's decision" announced  "[o]n April 16, 2015, during a

telephonic conference").  A few days later, on April 21, 2015, Petitioners other than Viorel

Micula commenced this action.  On the same day, the Honorable Naomi Reice Buchwald of this

Court, sitting in Part I, converted the ICSID award into a judgment (the "April 21 Judgment") in

a summary ex parte proceeding.  On April 27, 2015, Viorel Micula moved on consent to

intervene in this action, and on April 28, 2015, Judge Buchwald granted the motion and amended

the judgment (the "April 28 Judgment") to include him as an intervenor.

## II.     DISCUSSION

Romania seeks relief from the April 21 and April 28 Judgments entered by Judge

Buchwald under Rules 59(e) and 60(b).[2]  Rule 59(e) provides for altering or amending judgment.

Rule 60(b) allows a court to "relieve a party . . . from a final judgment" where, as relevant here,

"the judgment is void" or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(4), (6).  A

judgment is void under Rule 60(b)(4) "only if the court that rendered it lacked jurisdiction of the

subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."

*Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 193 (2d Cir. 2006).  "[A]ny other reason

that justifies relief" under Rule 60(b)(6) is narrowly construed to "require the party seeking to

avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief."  *In re*

*Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 356 (2d Cir. 2013).

In substance, Romania argues that the judgment is void on the ground that the method of

its entry violates the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. § 1602 et seq.

In addition, the Commission (and Romania for the first time in reply) argues that, even if the

---

[2]      Romania also moves under Rule 62(b), which allows a court to "stay the execution of a
judgment -- or any proceedings to enforce it -- pending disposition of" motions under Rules 50,
52, 59 and 60.  Fed. R. Civ. P. 62(b).  Because this Opinion resolves Romania's Rule 59 and 60
motions, its Rule 62(b) motion is denied as moot.

judgment is not vacated for failure to comply with the FSIA, the Court should abstain from

exercising jurisdiction because of comity, and vacate the judgment because of the act of state

doctrine and the foreign sovereign compulsion doctrine.  Each issue is addressed in turn.

### A.      Recognition of ICSID Awards in Ex Parte Summary Proceedings

Romania argues that ICSID Awards can be recognized only through a plenary action

after service on a foreign state as required by the FSIA, *see* 28 U.S.C. § 1608(a), and cannot be

recognized by summary ex parte proceedings, as happened here.  That argument is rejected

thoroughly and persuasively in *Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*, ---

F. Supp. 3d ----, No. 14 Civ. 8163, 2015 WL 631409 (S.D.N.Y. Feb. 13, 2015) (Engelmayer, J.).

*See also Miminco, LLC v. Democratic Republic of the Congo*, --- F. Supp. 3d  ----, No. Civ. 14-

01987, 2015 WL 1061555, at *2 (D.D.C. Feb. 9, 2015) (concluding on different grounds that "ex

parte proceedings suffice for recognition of ICSID arbitral awards").  *Contra Micula*, 2015 WL

2354310, at *6 ("Petitioner Micula must file a plenary action under section 1650a to convert his

ICSID award into an enforceable judgment.").  As fully discussed in *Mobil*, given the spirit of

the ICSID Convention (to which the United States is a party), the language of its enabling

statute, the clear exceptions to the FSIA that apply and precedent in this District, the expensive

and time-consuming process of a plenary proceeding to recognize an ICSID award in the United

States is unnecessary as a matter of law.

Three provisions of the ICSID Convention are relevant here.  Article 53 provides that

"award[s] shall be binding on the parties and shall not be subject to any appeal or to any other

remedy except those provided for in this Convention."  ICSID Convention, art. 53.  This

provision is directed to the arbitrating parties, here the Petitioners and Romania.  *See Mobil*,

2015 WL 631409 at *20.  Article 54, directed to the contracting states, including the United

States, provides that their national courts "shall recognize an award rendered pursuant to this

Convention as binding *and* enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."  ICSID Convention, art. 54 (emphasis added).  The review of the award is limited to its authenticity and is otherwise mechanistic and "automatic."  *Mobil*, 2015 WL 631409, at *20.  Finally, Article 55 preserves procedural safeguards for an award debtor at the *execution* stage: "Nothing in Article 54 shall be construed as derogating from the law in force in any Contracting State relating to immunity of that State or of any foreign State from *execution*."  ICSID Convention, art. 55 (emphasis added).  Accordingly, a judgment debtor's rights "to challenge the award substantively before ICSID and to resist attachment or execution in the United States to the extent assets are found here [] are unaffected by the recognition process" contemplated by Article 54.  *Mobil*, 2015 WL 631409, at *10.

ICSID's enabling statute explains that an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."  22 U.S.C. § 1650a.  However, § 1650a does not explain how the award is to be converted into a judgment.  Contrary to the reasoning in *Micula*, the enabling statute should not be read to collapse all distinction between "recognition" and "enforcement."  *See Micula*, 2015 WL 2354310, at *5 (rejecting "any distinction between recognition or confirmation of an ICSID award, on the one hand, and enforcement, on the other").  Regardless of how state judgments are typically treated in federal courts, *see id.*, the ICSID Convention, a treaty to which the United States is a party, mandates both recognition *and* enforcement.  As has been recognized in the academic literature and explained at length in *Mobil*, by addressing only "enforcement," § 1650a created a statutory gap that is appropriately filled by looking to the law of the forum state -- in this case, New York.  *See generally Mobil*,

6

2015 WL 2354310, at *5 n.9, *7-11 ("the case law overwhelmingly supports looking to the law

of the forum state . . . to fill the procedural gap in § 1650a as to the manner in which a

recognition proceeding is to occur").  Under New York law, the ex parte procedure used here

pursuant to Article 54 of New York's CPLR suffice.  *See id.* at *9 (noting that, when Congress

enacted § 1650a, "it was on notice that expeditious, ex parte recognition procedures were being

used in both state and federal courts").

    The scope of this holding is narrow and limited to the "recognition" of the Award.

Recognition is a matter in which a court has no discretion once it determines that an award is

authentic.  Romania does not dispute the authenticity of the Award.  As Article 53 of the ICISD

Convention unambiguously states, awards "*shall not* be subject to *any appeal* or to *any other*

*remedy* except those provided for in this Convention.  Each party *shall* abide by and comply with

the terms of the award except to the extent that enforcement shall have been stayed pursuant to

the relevant provisions of this Convention."  ICSID Convention, art. 53 (emphases added).  Here,

ICSID has lifted the temporary stay of enforcement.  Accordingly, there is little for a court in an

ICSID member state to do other than confirm the Award.

    Despite invocations of procedure and the FSIA, Romania's submissions on this motion

make clear that its actual challenge is to the Award itself.  Romania objects that it cannot pay out

the damages under the Award because the Commission forbids it from doing so.  In effect, it

objects that the Award is illegal.  But that argument is not a basis on which district courts can

deny recognition of ICSID awards.  Indeed, there can be *no* substantive review of an ICSID

award in this court.  Romania's only venue for advancing that argument is at ICSID's annulment

proceeding, which is already underway.  If the award is annulled by ICSID, this Court can then

give Romania the relief it seeks by recognizing the annulment and vacating the April 28

Judgment at issue.  *See* ICSID Convention, art. 53 ("'award' shall include any decision interpreting, revising or annulling such award").  Until then, Romania can get no relief here from the ICSID Award, and no stay is warranted during the pendency of the annulment proceeding.

The futility of Romania's position becomes clear once it is accepted for purposes of argument.  Even if Petitioners were directed to commence a plenary action for recognition, as Romania urges, nothing would change substantively.  Romania "has not identified any legal basis on which, were it to be granted the right to be sued and to participate in the award recognition process, it could, or would, [successfully] challenge ICSID's award to [Petitioners]." *Mobil*, 2015 WL 631409, at \*22.  All that a plenary proceeding would accomplish is delaying the inevitable recognition of the Award.

Confirmation here does not, however, mean that Romania is without recourse in contesting execution of the judgment.  "[T]he strong protections that the FSIA affords sovereigns at the execution and attachment stages are in no way impeded by this holding." *Id.* at \*23. "Creation of a domestic judgment is a predicate to, not a substitute for, execution upon a judgment." *Id.*  Those issues, however, are not at issue on this motion.  To the extent Romania claims it has already paid at least part of the Award, it can raise such defenses and arguments in the enforcement proceedings.

### B.   Stay Pending Appeal

In the alternative, Romania seeks to stay "enforcement" of the judgment pending resolution of the appeal in *Mobil*.  This proceeding concerns only the recognition of the award and entry of a judgment.  Assuming that Romania seeks to stay this proceeding, it has not cited precedent for addressing a stay of judgment pending an appeal in a different case.  Under Rule 62(d), Romania would be entitled to an automatic stay of the judgment pending its *own* appeal, provided it posts a supersedeas bond approved by the Court to protect the adverse party from any

harm occasioned by the stay.  *See* Fed. R. Civ. P. 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . ."); Charles Alan Wright, et al., 11 Fed. Prac. & Proc. Civ. § 2905 (3d ed.) ("The stay issues as a matter of right in cases within Rule 62(d), and is effective when the supersedeas is approved by the court."); *see also Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 100 n.6 (D.D.C. 2011) (finding that foreign nation must post supersedeas bond for stay pending appeal); *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988) (ordering foreign nation to pay supersedeas bond pending appeal).  However, by seeking a stay pending the appeal in another case, Romania apparently seeks to skirt the requirement for a bond and the protections it would provide the adverse party.  This is akin to its refusal to provide the assurance which resulted in the lifting of the stay in the ICSID proceedings.  Without a bond or some other guaranty, a stay is unfair and would impose a hardship on Petitioners, who state they are concerned that Romania will remove assets subject to attachment in the United States.

In addition, Romania cannot satisfy the factors for a discretionary stay.  "[A] stay is not a matter of right, even if irreparable injury might otherwise result," and is instead "an exercise of judicial discretion . . . dependent upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Id.* at 433-34.  Courts in this District have articulated two separate tests that may apply.  The first concerns stays of proceedings prior to judgment pending resolution of a controlling question of law by the Second Circuit in a related case.  *See, e.g.*, *Estate of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11 Civ. 1608, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012).  The second concerns stays of judgment or other orders pending appeal in *that* case.  *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167,

169 (2d Cir. 2007) (addressing stay entered during pendency of interlocutory appeal of order denying dispositive motions).

"[T]he power to stay proceedings [and not judgment] is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (emphasis added).  Because this case is at an end and judgment has been entered, a stay here does not serve any interests of economy, time and effort.  Accordingly, the test governing stays of *judgment* pending appeal is better suited to this matter.

Courts consider four factors to determine whether to stay a judgment pending appeal: (1) whether the stay applicant has made a strong showing of likely success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

"The first two factors of the traditional standard are the most critical." *Id.* at 434.  As to the first factor, "[m]ore than a mere 'possibility' of relief is required." *Id.*  Here, in light of the strong reasoning in prior cases in this District confirming ex parte ICSID awards and explaining the validity of such a procedure, Romania has shown no more than a mere possibility of relief. *See Mobil*, 2015 WL 631409; *Siag v. Arab Republic of Egypt*, No. M-82, 2009 WL 1834562 (S.D.N.Y. June 19, 2009).

Similarly, "simply showing some 'possibility of irreparable injury'" as a result of the judgment "fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35.  Here, any injury Romania will suffer is on account of the Commission's determination preventing it from making

payment on the Award.  Its injury does not result from the procedure used to recognize the

ICSID award -- which is the narrow subject of the appeal in *Mobil*.  Because recognition of an

ICSID award is fundamentally ministerial and stripped of discretion, Romania would ultimately

find itself in the same position even if its view prevailed in the Second Circuit and Petitioners

brought a plenary case seeking the same relief.

The third factor -- injury to other parties -- counsels against a stay.  Petitioners argue that

a stay will delay their ability to enforce their judgment, and Romania will dissipate any

attachable assets in the United States.  The fourth factor -- the public interest -- is either neutral

or counsels against a stay.  While the public likely does not have a strong interest in the present

proceedings between foreign nationals and a foreign state, it has a strong interest in the United

States promptly complying with its treaty obligations under the ICSID Convention.

Based on the totality of the factors, no stay is warranted during the pendency of the

appeal in *Mobil*.  In addition, any application for a stay pending Romania's own appeal will be

denied unless Romania posts an appropriate supersedeas bond.

**C.      Sovereignty Concerns**

The next issue is whether judgment should be vacated in light of the E.U.'s sovereign

interests.  The Second Circuit recently endorsed the view that the European Community, "which

has been incorporated into the European Union," derives its sovereignty from its member states.

*See European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 143 n.15, 147 (2d Cir. 2014) (holding

that statutory phrase "organ of a foreign state" applies to the European Community, "which

serves numerous foreign states").  The Commission, as sovereign, argues that three doctrines --

international comity, the act of state doctrine and the foreign compulsion doctrine -- mandate

vacatur in this case.  These arguments are not persuasive.

As a threshold matter, the Commission's arguments blur multiple issues, which, although related, are not the same.  Repeatedly, the Commission frames the issue as (1) a matter "wholly internal within the E.U." regarding the (2) "dispute underlying the Award," and speaks of (3) "enforcement of the Award."  First, this proceeding presents the narrow issue of recognition, which is not "a wholly internal matter" to the E.U., but an obligation of every state that is party to the ICSID Convention.  Second, the "dispute underlying the Award" goes to the merits of the award, which is not at issue here.  Finally, the Commission's arguments regarding enforcement are also misdirected because this proceeding does not involve enforcement.

### 1.     International Comity

"International comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience.'"  *Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc*., 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895)).  "In addition to its imprecise application, even where the doctrine clearly applies it is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience, and expediency."  *Id.* (internal quotation marks omitted).

Here, the Commission asks this Court to defer to the judgment of an alternative forum -- the E.U. Court of Justice and/or the national courts of the E.U. member states -- in matters regarding the Award.  "The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction."  *Royal & Sun,* 466 F.3d at 93.  "For two actions to be considered parallel, the

parties in the actions need not be the same, but they must be substantially the same, litigating

substantially the same issues in both actions."  *Id.* at 94.

The Commission's proceedings in Europe are not sufficiently "parallel" for purposes of

international comity.  The narrow issue here is the recognition of the ICSID Award.  Because

neither the substance nor the enforcement of the Award is at issue here, the proceedings are not

substantially parallel to justify the extraordinary remedy of abstention.

Further, international comity should not stay a court's hand in a proceeding like this one

that seeks only recognition of an arbitration award.  A party with an ICSID award can convert it

into a judgment in *any* member state.  As a party to the ICSID Convention, the United States has

a compelling interest in fulfilling its obligation under Article 54 to recognize and enforce ICSID

awards regardless of the actions of another state.  To do otherwise would undermine the ICSID

Convention's expansive spirit on which many American investors rely when they seek to

confirm awards in the national courts of the Convention's other member states.

### 2.      Act of State Doctrine

The act of state doctrine has no application here.  First, "the act of state doctrine provides

foreign states with a substantive defense on the merits."  *Republic of Austria v. Altmann*, 541

U.S. 677, 700 (2004).  The E.U. is not a party and cannot raise this defense. Romania has

waived the argument by failing to raise it in its opening brief.  Second, even on the merits, the

doctrine is inapposite.  As the Supreme Court explained, the act of state doctrine "merely

requires that, in the process of deciding, the acts of foreign sovereigns taken within their own

jurisdictions shall be deemed valid."  *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493

U.S. 400, 409 (1990).  The narrow issue here is the recognition of the Petitioners' ICSID Award.

In recognizing that award, no act of any sovereign has been deemed either relevant or invalid.

### 3.     Foreign Sovereign Compulsion Doctrine

The Commission finally argues that the so-called "foreign sovereign compulsion" doctrine mandates vacatur.  "The doctrine of foreign sovereign compulsion has evolved as a principle under international law to reduce the hardship placed on parties caught between the conflicting demands of more than one nation.  Essentially, a party invoking the defense claims, 'I did it, but I'm not guilty because the government made me do it.'"  Michael A. Warner, Jr., Comment, *Strangers in a Strange Land: Foreign Compulsion and the Extraterritorial Application of United States Employment Law*, 11 Nw. J. Int'l L. & Bus. 371, 373-74 (1990).

Assuming that (1) a sovereign like Romania could invoke the defense as the Commission argues and (2) Romania did in fact timely invoke the defense, it would nonetheless be unavailing.  The Commission argues that Romania must comply with its obligations as an E.U. Member State, including the prohibition from paying Petitioners under the Award.  First, any "compulsion" by the E.U. is offset by Romania's voluntary submission to the ICSID process through its treaty with Sweden.  Second, whether Romania must pay is not at issue in this proceeding and should be raised instead during proceedings to enforce the Award.

### D.     Additional Procedural Issues

Romania's motion raises two additional procedural issues.  First, Romania mistakenly moves to vacate the April 21 Judgment.  The April 21 Judgment was amended pursuant to Rule 59(e) by the April 28 Judgment.  Therefore, Romania's motion to vacate and/or stay the April 21 Judgment is denied as moot.

Second, Rule 6(b)(2) does not allow for extension of the 28 days in which to file any Rule 59(e) motion.  Here, Romania timely filed the original motion to vacate on May 19, 2015,

but filed the amended motion more than 28 days after judgment on June 15, 2015.  Nevertheless,

Romania's amended motion to vacate and/or stay is not untimely, even as it relates to Rule 59(e),

because it merely expanded the original motion, which sufficiently "apprise[d] the court and the

opposing party of the grounds upon which reconsideration is sought" for purposes of Rule

7(b)(1).  *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006).  Accordingly, the

amended memorandum of law and accompanying exhibits are properly before the Court on a

Rule 59(e) motion (in addition to under the other applicable rules).

## III.     CONCLUSION

For these reasons, the Commission's motion to file an amicus brief is GRANTED, and

Romania's motion to vacate and/or stay judgment is DENIED.

The Clerk of Court is directed to close the motions at Dkt. Nos. 22 and 30 as denied, and

the motions at Dkt. Nos. 42 and 45 as granted.

SO ORDERED.

Dated: August 5, 2015
       New York, New York


_____
        LORNA G. SCHOFIELD
     UNITED STATES DISTRICT JUDGE