UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            :
IOAN MICULA, et al.,                                 :
                               Petitioners,  :
                                           :      15 Misc. 107 (LGS)
                -against-                        :
                                           :      **OPINION**
THE GOVERNMENT OF ROMANIA,      :
                              Respondent.  :
                                           :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/09/2015

LORNA G. SCHOFIELD, District Judge:

       On April 21, 2015, and by amendment on April 28, 2015, the Honorable Naomi Reice Buchwald of this Court, sitting in Part I, converted an ICSID (International Center for Settlement of Investment Disputes) award against Respondent the Government of Romania ("Romania") into a judgment. By Opinion and Order dated August, 5, 2015, Romania's motion to vacate and/or stay the judgment was denied. On September 2, 2015, Romania moved for reconsideration. For the following reasons, the latest motion is denied.

       The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotation marks omitted). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on

the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation and internal quotation marks omitted). The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

As an initial matter, it is unclear how Romania can properly bring the motion. Romania invokes Rule 60(b). However, the decision for which it seeks reconsideration was itself a denial under Rule 60(b), as well as Rules 59(e) and 62(b). A motion for reconsideration is "not a vehicle for . . . taking a second bite at the apple," much less a third or fourth bite. *See Analytical Surveys*, 684 F.3d at 52. Even if this motion were proper procedurally, it is meritless.

Romania has not cited any change in controlling law or any new evidence. Romania's first argument is that the Court incorrectly ruled that ex parte proceedings are sufficient for the recognition of the ICSID awards. This issue has already been fully litigated. Romania relies on two district court cases that are not binding on this Court, and do not directly support Romania's argument in any event, and irrelevant case law. *See Micula v. Gov't of Romania*, 1:14-CV-00600, 2015 WL 2354310, at *4 n. 6 (D.D.C. May 18, 2015) (noting that Judge Rudolph Contreras of the District of Columbia Court recently "concluded that *ex parte* recognition of an ICSID award was appropriate under the ICSID Convention and 22 U.S.C. § 1650a); *Continental Casualty Co. v. Argentine Republic*, 893 F.Supp.2d 747, 754-55 (E.D.Va. 2012) (denying Argentina's motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction, and granting it for improper venue and transferring the case to the District of Columbia District Court, and not reaching the question of ex parte recognition of an ICSID award); 22 U.S.C. § 1650a (stating that arbitration awards "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction" of the United States, but not speaking to ex parte recognition of an arbitration award); *see also Threlkeld v. Tucker,* 496 F.2d 1101, 1104 (9th Cir.

1974) (holding among other things that a state court judgment does not alone give a federal court subject matter and personal jurisdiction); *U.S. v. Febre* 978 F.2d 1262 (7th Cir. 1992) (unpublished table opinion) (holding, among other things, that the procedure for registering a foreign judgment is separate from procedures for enforcement of a judgment).  This argument is rejected.

Romania's second argument, that the Court ignored Romania's argument that venue is only proper in the District of Columbia because the Foreign Sovereign Immunities Act ("FSIA") requires all suits against sovereigns to be brought there, is also rejected.  The FSIA does not apply here.

Romania's third argument, that Petitioners engaged in forum shopping and ignored the District of Columbia Court's order, is irrelevant.  This Court disagrees with the District of Columbia Court's decision, which is not binding here.

Fourth, Romania argues that the Court erred in concluding that any amount it has paid is not relevant at the recognition stage and can be brought up at enforcement.  This argument has already been addressed, and any further argument should be addressed to the Second Circuit.  On the merits of the argument, Romania incorrectly analogizes this case to *Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*,  ---- F. Supp. 3d ----, ----, No. 14 Civ. 8163, 2015 WL 631409 (S.D.N.Y. Feb. 13, 2015).  In that case, the award had been stayed by ICSID, and the reason for the annulment proceedings involved the actual amount at issue: "the award cannot currently be enforced because the parties are litigating [in the annulment proceeding] the precise amount that will be offset on the ground that Mobil has already received a separate award against the national oil company of Venezuela." *Id*. at *24.  Here, as noted in the Court's August 5, 2015, opinion at p. 7-8, the annulment proceedings have not been stayed.  Moreover, Romania's challenge concerns its ability to pay *any* award rather than disputing the precise amount.  Finally,

at the recognition stage, no substantive review is permissible in any event, and the court merely converts the ICSID award into a judgment.

Romania's fifth argument is that the denial of a discretionary stay was wrong because the Court did not consider all the facts and the complicated, competing demands on Romania. To the contrary, the Court's opinion recited the relevant facts and was based on those facts.

Finally, Romania states that part of the relief it seeks is the reconsideration of the portion of the opinion requiring a supersedeas bond pending appeal. However, Romania provides no law for why it should not be required to post such a bond. Instead, Romania quotes Supreme Court case law that discusses the factors for a discretionary stay. Neither case discusses supersedeas bonds. *See Nken v. Holder*, 556 U.S. 418, 426 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Romania's language that "the bond requirement should not be eliminated or reduced unless doing so 'does not unduly endanger the judgment creditor's interest in ultimate recovery'" appears to come from a Southern District of New York case and not from Supreme Court case law. *See Morgan Guar. Trust Co. of New York v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988).

For the reasons stated above, Romania's motion for reconsideration is denied.

Dated: September 3, 2015
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**LORNA G. SCHOFIELD**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

4